UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **THEODENT, LLC et al.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 22-507** |
| **DR. ARMAN SADEGHPOUR** | **SECTION: "G"** |

## ORDER AND REASONS

Before the Court is Plaintiffs Theodent, LLC ("Theodent") and Theocorp Holding Co., LLC's ("Theocorp") (collectively, "Plaintiffs") "Motion to Remand."[1] Defendant Dr. Arman Sadeghpour ("Defendant") opposes the motion.[2] On February 25, 2022, Defendant removed the action to this Court, asserting subject matter jurisdiction under 28 U.S.C. § 1331, based on Plaintiffs' request for a declaratory judgment.[3] For the reasons set forth in detail below, Defendant has not shown that Plaintiffs' request for a declaratory judgment presents a federal question or that resolution of the claim will require interpretation of federal law. Therefore, considering the motion, the memoranda in support and in opposition, the record, and the applicable law, the Court grants the motion in part and remands this matter to the 24th Judicial District Court for the Parish of Jefferson, State of Louisiana for further proceedings. The Court denies Plaintiff's request for attorneys' fees.

---

[1] Rec. Doc. 8.

[2] Rec. Doc. 22.

[3] Rec. Doc. 1.

## I. Background

*A.     Factual Background*

On December 6, 2021, Plaintiffs filed a petition against Defendant in the 24th Judicial District Court for the Parish of Jefferson.[4] Theocorp is a Louisiana limited liability company engaged in the business of developing, owning, and commercializing intellectual property relating to various food, dental, and other oral care products.[5] Theodent is a Louisiana limited liability company in the business of manufacturing and selling certain products for topical oral care, such as toothpaste, mouthwash and dental gel treatments.[6] Theodent is a subsidiary of Theocorp.[7]

Defendant was a founding member of Theodent and Theocorp.[8] He served as a manager, president, and member of Theodent, and a manager, president, and chief executive officer of Theocorp.[9] Plaintiffs allege that Defendant breached his duties to the company by wrongfully charging Plaintiffs for over $1.2 million worth of personal goods including personal travel, designer clothes, perfume, electronics, incense, antique furniture, and a CPAP machine.[10] Plaintiffs allege that Defendant deliberately misclassified these purchases in the company's financials in an effort to conceal his spending.[11]

---

[4] Rec. Doc. 1-1.

[5] *Id.* at 1.

[6] *Id.*

[7] *Id.*

[8] *Id.*

[9] *Id.*

[10] *Id.* at 5–6, 9.

[11] *Id.* at 5–6.

### B.   *Procedural Background*

On December 6, 2021, Plaintiffs filed a Petition for Damages against Defendant in the 24th Judicial District Court for the Parish of Jefferson.[12] Plaintiffs bring claims for breach of duties, conversion, misappropriation of company funds, and fraud.[13] Plaintiffs also seek a declaratory judgment confirming that they are the true owners of Theodent's web domain, which Defendant acquired for the company but registered in his own name.[14]

On February 25, 2022, Defendant removed the action to this Court, asserting subject matter jurisdiction under 28 U.S.C. § 1331, based on Plaintiffs' request for a declaratory judgment.[15] Defendant advances two theories of why this claim establishes federal jurisdiction. First, Defendant asserts that Plaintiffs' request for a declaratory judgment "is in reality a claim under the Anticybersquatting Consumer Protection Act ('ACPA') provision of the Lanham Act and therefore presents a federal question."[16] Second, Defendant contends that even if the Court views Plaintiffs' declaratory judgment request as a state law cause of action, a federal question still exists because, to resolve that claim, the Court inevitably must interpret the ACPA.[17]

On March 28, 2022, Plaintiffs filed a motion to remand.[18] On April 11, 2022, Plaintiffs filed a notice of voluntary dismissal, seeking to dismiss the request for declaratory judgment under

---

[12] *Id.* at 1–18.

[13] *Id.* at 12–16.

[14] *Id.* at 16–17.

[15] Rec. Doc. 1.

[16] *Id.* at 2–3.

[17] *Id.* at 7.

[18] Rec. Doc. 8.

Federal Rule of Civil Procedure 41(a)(1)(A)(i).[19] On May 10, 2022, Defendant filed an opposition to the motion to remand.[20] On May 18, 2022, Plaintiffs filed a reply brief in further support of the motion to remand.[21]

## II. Parties' Arguments

### A.   *Plaintiffs' Arguments in Support of Remand*

Plaintiffs assert that this case should be remanded because no federal question is presented.[22] Plaintiffs contend that the request for a declaratory judgment is not a claim for "cybersquatting" because Plaintiffs only seek resolution "of the threshold/predicate issue of ownership of the subject web domains as a matter of Louisiana agency and/or partnership law."[23] Plaintiffs note that Defendant has previously claimed that he owns those domains because he registered them under his personal name, but Plaintiffs allege that Defendant obtained those web domains as an agent acting on behalf of Theodent.[24] Therefore, Plaintiffs assert that "Theodent is the true owner of those domains under Louisiana law, notwithstanding Defendant's attempted registration."[25]

Plaintiffs assert that under Louisiana law "[a] partner can purchase property in his own name for and on behalf of the partnership."[26] Because Defendant was acting as a partner when he

---

[19] Rec. Doc. 15.

[20] Rec. Doc. 22.

[21] Rec. Doc. 26.

[22] Rec. Doc. 8-1 at 2.

[23] *Id.*

[24] *Id.*

[25] *Id.*

[26] *Id.* at 5 (quoting *Decatur-St. Louis Combined Equity Properties, Inc. Venture v. Abercrombie*, 411 So. 2d 677, 680 (La. App. 4 Cir. 1982)).

4

registered the domain names, Plaintiffs argue that the domains belong to Theodent.[27] Additionally, even if Defendant had intended to obtain the domains for himself, Plaintiffs assert that he would have been running afoul of his obligations as a mandatary under Louisiana law.[28] Plaintiffs point out that they do not allege that Defendant traffics in or otherwise uses the domain names in the course of any trade.[29] Instead, Plaintiffs state that they are seeking a ruling to confirm that, because Defendant was directed by Theodent to obtain these domains for company use, Theodent is the owner of the domains.[30]

Plaintiffs contend that Defendant has not established which provisions of the ACPA will need to be interpreted in this litigation.[31] Therefore, Plaintiffs argue that this case should be remanded because Defendant has failed to meet his burden of affirmatively showing that federal jurisdiction exists in this case.[32] Finally, Plaintiffs request that the Court order Defendant to pay Plaintiffs' reasonable costs, expenses, and attorneys' fees incurred as a result of the removal.[33]

### B. *Defendant's Arguments in Opposition*

As an initial matter, Defendant asserts that Plaintiffs cannot voluntarily dismiss the declaratory judgment request under Federal Rule of Civil Procedure 41(a) because the Rule speaks to dismissal of an entire action, not a particular claim.[34] Moreover, Defendant points out that

---

[27] *Id.*

[28] *Id.*

[29] *Id.* at 6.

[30] *Id.*

[31] *Id.* at 7.

[32] *Id.*

[33] *Id.* at 8.

[34] Rec. Doc. 22 at 1.

jurisdiction is decided at the time of removal, and any subsequent dismissal of a federal claim would not divest this Court of jurisdiction.[35]

Defendant asserts that the Petition states a federal cause of action.[36] Specifically, Defendant argues that Plaintiffs' declaratory judgment request alleging Dr. Sadeghpour's "misappropriation" of disputed web domains and his lack of authority to use Plaintiff's trademarks, and ultimately seeking a declaration of ownership of the disputed web domains, is in fact a claim under the ACPA.[37] Defendant contends that the allegations Plaintiffs offer in support of the declaratory judgment claim mirrors the elements of a claim under the ACPA.[38]

Alternatively, Defendant argues that removal was proper under the *Grable* doctrine.[39] At a minimum, Defendant contends that the Petition asks the Court to determine whether Defendant or Plaintiffs have the right to control the domain names in dispute, which Defendant suggests requires interpretation of the ACPA.[40] Therefore Defendant argues that the *Grable* factors are met because a federal issue is: (1) necessarily raised; (2) actually disputed; (3) substantial; and (4) capable of resolution in federal court without disrupting the federal-state balance.[41]

---

[35] *Id.* at 2.

[36] *Id.* at 3.

[37] *Id.* at 4.

[38] *Id.*

[39] *Id.* at 5.

[40] *Id.* at 6.

[41] *Id.* at 5–7.

C. *Plaintiffs' Arguments in Further Support of Remand*

In further support, Plaintiffs reassert that the declaratory judgment request does not fall under the ACPA's narrow statutory framework.[42] Plaintiffs argue that a core element of an ACPA claim is not alleged in the Petition because the Petition does not allege that Defendant traffics in or actually uses the Theodent domains.[43] Instead, Plaintiffs state that they allege only that Defendant "registered the Theodent domains in his own name; that this registration was ineffective as a matter of Louisiana principal/agency law; and that [Defendant] now refuses to turn over control of those sites based on his belief that his registration in his own name was proper."[44] In any event, Plaintiffs state that their main focus is recovering the $1.2 million allegedly misappropriated by Defendant.[45] Therefore, Plaintiffs state that they intend to amend the Petition to remove the web domain claim once this Court determines where the case should proceed.[46]

### III. Legal Standard

A defendant may remove a state civil court action to federal court if the federal court has original jurisdiction over the action.[47] Pursuant to 28 U.S.C. § 1331, a district court has subject matter jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." Often called "federal-question jurisdiction," this type of jurisdiction "is invoked by and large by plaintiffs pleading a cause of action created by federal law (*e.g.*, claims under 42

---

[42] Rec. Doc. 26 at 2.

[43] *Id.* at 2–4.

[44] *Id.* at 4.

[45] *Id.* at 4–5.

[46] *Id.* at 5.

[47] 28 U.S.C. § 1441(a); *Syngenta Crop Prot., Inc. v. Henson*, 537 U.S. 28, 34 (2002).

U.S.C. § 1983)."[48] A single claim over which federal-question jurisdiction exists is sufficient to allow removal.[49]

Pursuant to the "well-pleaded complaint" rule, "a federal court has original or removal jurisdiction only if a federal question appears on the face of the plaintiff's well-pleaded complaint; generally, there is no federal jurisdiction if the plaintiff pleads only a state law cause of action."[50] Even where a federal remedy is also available, the "plaintiff is the master of his complaint and may generally allege only a state law cause of action."[51] Further, "[a] defense that raises a federal question is inadequate to confer jurisdiction."[52]

Generally, there are "two recognized exceptions to the well-pleaded complaint rule."[53] First, there is the "complete pre-emption corollary to the well-pleaded complaint rule," which is not raised as a grounds for removal by Defendant.[54] Second, there is a "special and small" category of cases in which a state law cause of action can give rise to federal question jurisdiction because the claim involves important federal issues.[55] This exception "captures the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn

---

[48] *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, 545 U.S. 308, 312 (2005); *see also Gunn v. Minton*, 568 U.S. 251, 257 (2013) ("Most directly, a case arises under federal law when federal law creates the cause of action asserted.").

[49] *See Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 563 (2005); *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 164–66 (1997).

[50] *Bernhard v. Whitney Nat'l Bank*, 523 F.3d 546, 551 (5th Cir. 2008).

[51] *Id.*

[52] *Merrell Dow Pharmaceuticals, Inc. v. Thompson*, 478 U.S. 804, 808 (1986).

[53] *Devon Energy Prod. Co., L.P. v. Mosaic Potash Carlsbad, Inc.*, 693 F.3d 1195, 1203 (10th Cir. 2012).

[54] *Caterpillar Inc. v. Williams*, 482 U.S. 386, 393 (1987).

[55] *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 699 (2006).

on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues."[56]

In *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, the Supreme Court instructed that the presence of a federal issue is not "a password opening federal courts to any state action embracing a point of federal law."[57] Rather, "federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress."[58] If all four requirements are met, "jurisdiction is proper because there is a 'serious federal interest in claiming the advantages thought to be inherent in a federal forum,' which can be vindicated without disrupting Congress's intended division of labor between state and federal courts."[59]

The removing party bears the burden of demonstrating that federal jurisdiction exists.[60] In assessing whether removal was appropriate, the Court is guided by the principle, grounded in notions of comity and the recognition that federal courts are courts of limited jurisdiction, that "the removal statute should be strictly construed in favor of remand."[61] Remand is appropriate if the

---

[56] *Grable*, 545 U.S. at 312.

[57] *Id.* at 314.

[58] *Gunn*, 568 U.S. at 258 (citing *Grable*, 545 U.S. at 314).

[59] *Id.* (quoting *Grable*, 545 U.S. at 313–14).

[60] *See Allen v. R&H Oil & Gas Co.*, 63 F.3d 1326, 1335 (5th Cir. 1995).

[61] *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002).

9

Court lacks subject matter jurisdiction, and "doubts regarding whether removal jurisdiction is proper should be resolved against federal jurisdiction."[62]

### IV. Analysis

On February 25, 2022, Defendant removed the action to this Court, asserting subject matter jurisdiction under 28 U.S.C. § 1331, based on Plaintiffs' request for a declaratory judgment.[63] Defendant advances two theories of why this claim establishes federal jurisdiction. First, Defendant asserts that Plaintiffs' request for a declaratory judgment presents a federal question under the ACPA.[64] Second, Defendant contends that even if the Court views Plaintiffs' declaratory judgment request as a state law cause of action, a federal question still exists because, to resolve that claim, the Court inevitably must interpret the ACPA.[65]

Thereafter, Plaintiffs filed a notice of voluntary dismissal, seeking to dismiss the request for declaratory judgment under Federal Rule of Civil Procedure 41(a)(1)(A)(i).[66] As a preliminary matter, the Court notes that Plaintiffs' attempt at voluntarily dismissing the declaratory judgment request is ineffective. Plaintiffs filed a notice of voluntary dismissal pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i). However, the Fifth Circuit has made clear that "Rule 41(a) dismissal only applies to the dismissal of an entire action—not particular claims."[67]

---

[62] *Acuna v. Brown & Root Inc.*, 200 F.3d 335, 339 (5th Cir. 2000) (citing *Willy v. Coastal Corp.*, 855 F.2d 1160, 1164 (5th Cir. 1988)).

[63] Rec. Doc. 1.

[64] *Id.* at 2–3.

[65] *Id.* at 7.

[66] Rec. Doc. 15.

[67] *Bailey v. Shell W. E&P, Inc.*, 609 F.3d 710, 720 (5th Cir. 2010) (citing *Exxon Corp. v. Md. Cas. Co.*, 599 F.2d 659, 662 (5th Cir. 1979)).

Moreover, the Fifth Circuit has made clear that determining whether a court has jurisdiction over an action removed from state court requires courts to "consider the claims in the state court petition as they existed *at the time of removal*."[68] Therefore, a motion to voluntarily dismiss any federal claims, which was filed after removal to this Court,[69] cannot divest this Court of jurisdiction if it finds that removal was proper based on Plaintiffs' claims "as they existed at the time of removal."[70] Indeed, the Fifth Circuit has held that a plaintiff may not defeat jurisdiction over a properly removed case by subsequently amending the complaint to omit all claims under federal law.[71] Therefore, the Court analyzes whether the Petition originally stated a federal claim or required an interpretation of the ACPA.

In the Petition, Plaintiffs allege that Defendant "misappropriated a number of web domains while acting as a representative for Theodent."[72] Plaintiffs allege that Defendant "was directed by Theodent to obtain these domain names for Company use, yet he registered them in his personal name."[73] According to the Petition, Defendant "has control over the Theodent domain, and thus has visibility into and control over all business transacted through the webpage," and he has control over all of the company's email addresses.[74] Plaintiffs assert that they made several attempts to

---

[68] *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002) (citing *Cavallini v. State Farm Mut. Auto Ins. Co.,* 44 F.3d 256, 264 (5th Cir. 1995)) (emphasis added).

[69] Rec. Doc. 11.

[70] *Manguno*, 276 F.3d at 723.

[71] *See Hook v. Morrison Milling Co.*, 38 F.3d 776, 780 (5th Cir. 1994) ("We have stated on several occasions that a post-removal amendment to a petition that deletes all federal claims, leaving only pendent state claims, *does not* divest the district court of its properly triggered subject matter jurisdiction." (emphasis in original)) (citing *Brown v. Southwestern Bell Tel. Co.,* 901 F.2d 1250, 1254 (5th Cir. 1990); *In re Carter,* 618 F.2d 1093, 1101 (5th Cir. 1980)).

[72] Rec. Doc. 1-1 at 16.

[73] *Id.*

[74] *Id.* at 17.

obtain access to the domains and company email addresses, but Defendant refused claiming that he "owns the Theodent internet domain names."[75] Plaintiffs allege that Defendant "misappropriated [the domains] by registering them under his personal name when he was required to register them on behalf of the Company."[76] Plaintiffs seek a judgment declaring that Theodent "is the true owner of this incorporeal movable property, namely, the Theodent web domains and associated email addresses."[77]

Defendant argues that this portion of the Petition presents a federal question under the ACPA or, alternatively, will inevitably require the Court to interpret the ACPA. The ACPA provides:

> A person shall be liable in a civil action by the owner of a mark, including a personal name which is protected as a mark under this section, if, without regard to the goods or services of the parties, that person—
> (i) has a bad faith intent to profit from that mark, including a personal name which is protected as a mark under this section; and
> (ii) registers, traffics in, or uses a domain name that—
> (I) in the case of a mark that is distinctive at the time of registration of the domain name, is identical or confusingly similar to that mark;
> (II) in the case of a famous mark that is famous at the time of registration of the domain name, is identical or confusingly similar to or dilutive of that mark; or
> (III) is a trademark, word, or name protected by reason of section 706 of title 18 or section 220506 of title 36.[78]

The statute goes on to list nine non-exhaustive factors a court may consider in determining whether someone has acted in bad faith under the ACPA.[79] Therefore, in order to prevail on an ACPA

---

[75] *Id.*

[76] *Id.*

[77] *Id.*

[78] 15 U.S.C. § 1125(d)(1)(A).

[79] *Id.* at 1125(d)(1)(B). A court may consider the following factors in determining whether someone acted in bad faith:

(I)   the trademark or other intellectual property rights of the person, if any, in the domain name;

claim, a plaintiff must show that (1) its trademark "is a distinctive or famous mark entitled to protection"; (2) the defendant's "domain names are 'identical or confusingly similar to' [the plaintiff's] mark"; and (3) the defendant "registered the domain names with the bad faith intent to profit from them."[80]

In this case, Plaintiffs do not allege that that Defendant obtained the domains in a bad faith attempt to profit from Theodent's trademark, nor do Plaintiffs even allege that Defendant infringed on Theodent's trademark by registering the domain names. Plaintiffs allege that Theodent directed Defendant to obtain the domain names for company use.[81] Plaintiffs allege that Theodent is the true owner of the domains because Defendant was directed to obtain them for the company, but

---

(II) the extent to which the domain name consists of the legal name of the person or a name that is otherwise commonly used to identify that person;
(III) the person's prior use, if any, of the domain name in connection with the bona fide offering of any goods or services;
(IV) the person's bona fide noncommercial or fair use of the mark in a site accessible under the domain name;
(V) the person's intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site;
(VI) the person's offer to transfer, sell, or otherwise assign the domain name to the mark owner or any third party for financial gain without having used, or having an intent to use, the domain name in the bona fide offering of any goods or services, or the person's prior conduct indicating a pattern of such conduct;
(VII) the person's provision of material and misleading false contact information when applying for the registration of the domain name, the person's intentional failure to maintain accurate contact information, or the person's prior conduct indicating a pattern of such conduct;
(VIII) the person's registration or acquisition of multiple domain names which the person knows are identical or confusingly similar to marks of others that are distinctive at the time of registration of such domain names, or dilutive of famous marks of others that are famous at the time of registration of such domain names, without regard to the goods or services of the parties; and
(IX) the extent to which the mark incorporated in the person's domain name registration is or is not distinctive and famous within the meaning of subsection (c)(1) of this section.

[80] *S. Co. v. Dauben Inc.*, 324 F. App'x 309, 314 (5th Cir. 2009) (quoting *Shields v. Zuccarini*, 254 F.3d 476, 484 (3d Cir. 2001)).

[81] Rec. Doc. 1-1 at 17.

after he was fired Defendant continued to hold the "domains and emails hostage."[82] Defendant does not cite a single case where a court held that such allegations arise under the ACPA.

Each of the cases cited by Defendant are easily distinguishable. In *Overdrive, Inc. v. Foreword Magazine, Inc.*, a district judge in the Northern District of Ohio denied a motion to remand because the complaint asked the court to "review the Settlement Agreement and 15 U.S.C. § 1125 to determine and declare OverDrive's rights and status to the domain name 'forwardreviews.com' . . . and that OverDrive's ownership of the domain name 'forwardreviews.com' does not constitute cybersquatting piracy under federal law."[83] The district judge reasoned that the complaint arose under federal law because while the plaintiff "may primarily desire an interpretation of the Settlement Agreement . . . the complaint also directly seeks a declaration under a federal statute and federal law."[84] *Overdrive* is easily distinguishable because the complaint explicitly sought a declaration that use of the domain name did not constitute cybersquatting under the ACPA. In this case, Plaintiff does not even allege that Defendant is using the domain name.

Defendant also cites two cases that, without evaluating the propriety of the removal, noted they were removed from state court because the plaintiffs sought a declaratory judgment that they were the rightful owners of domain names.[85] Both of those cases involved business competitors

---

[82] *Id.*

[83] *Overdrive, Inc. v. Foreword Mag., Inc.*, No. 10-2814, 2011 WL 1870034, at *3 (N.D. Ohio May 12, 2011).

[84] *Id.*

[85] *Belks Media v. Onlinenic*, No. 09-198, 2009 WL 2423106, at *1 (N.D. Cal. Aug. 5, 2009) ("Plaintiff then filed an action in state court, seeking a judicial declaration that it is the rightful owner of 'belks.com.' Defendant removed the matter to this court, asserting federal question jurisdiction."); *Compana, LLC v. Aetna, Inc.*, No. 05-0277, 2006 WL 829111, at *1 (W.D. Wash. Mar. 27, 2006) ("Compana filed this action in state court seeking a declaratory judgment that it rightfully owns the domain name 'docfind.com' and that it is not infringing on Aetna's trademark. Aetna removed the case to this Court on February 16, 2005 based on federal question jurisdiction.").

using a domain name with bad faith intent to profit off of another business's trademark. Neither of the cases involved the registration of a domain name by a former employee at the direction of the plaintiff company and the subsequent holding of the domain name "hostage" by the defendant after he was fired. The declaratory judgment request at issue in this case appears to raise only state law issues regarding whether Defendant was acting in the scope of his employment when he obtained the domain names for Theodent or whether Defendant violated Louisiana mandatary law.

Additionally, Defendant has not shown that the Plaintiffs "necessarily raise" a "disputed" and "substantial" federal issue, "which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities."[86] Defendant has not demonstrated that adjudication of the declaratory judgment request will require an interpretation of the ACPA or the Lanham Act at all. Instead, it appears that resolution of this claim will depend entirely on principles of Louisiana law governing mandataries and business entities.

Finally, Plaintiffs request costs, expenses, and attorney's fees. Pursuant to 28 U.S.C. § 1447(c), "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney's fees, incurred as a result of the removal."[87] The Fifth Circuit has made clear that "a district court is not divested of jurisdiction to award attorney fees and costs pursuant to Section 1447(c) after a remand has been certified."[88] The decision to award attorney's fees under Section 1447(c) is within the sound discretion of the Court.[89] The "mere determination

---

[86] *Gunn*, 568 U.S. at 258; *Grable*, 545 U.S. at 314.

[87] 28 U.S.C. § 1447(c).

[88] *Coward v. AC & S, Inc.*, 91 F. App'x 919, 921–22 (5th Cir. 2004).

[89] *Darville v. Tidewater Marine Serv., Inc.*, No. 15-6441, 2016 WL 1402837, at *8 (E.D. La. Apr. 11, 2016) (Brown, J.) (citing *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 140 (2005)).

that removal was improper" does not automatically entitle a plaintiff to an award of fees.[90] Rather, in the absence of "unusual circumstances," this Court may award attorney's fees under Section 1447(c) where "the removing party lacks an objectively reasonable basis for seeking removal."[91] Although the Court has determined that removal was improper, Plaintiffs have not demonstrated that Defendant lacked an objective reasonable basis for seeking removal. Considering that there is limited caselaw on this issue, it does not appear that Defendant removed the case in bad faith.

### V. Conclusion

For the reasons set forth in detail above, Defendant has not shown that Plaintiffs' request for a declaratory judgment presents a federal question or that resolution of the claim will require interpretation of federal law. Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs' Motion to Remand[92] is **GRANTED IN PART and DENIED IN PART**. The request to remand is **GRANTED** and the case is hereby remanded to the 24th Judicial District Court for the Parish of Jefferson. Plaintiffs' request for attorneys' fees and costs is **DENIED.**

**NEW ORLEANS, LOUISIANA**, this   5th   day of August, 2022.

_____
**NANNETTE JOLIVETTE BROWN**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**

---

[90] *Am. Airlines, Inc. v. Sabre, Inc.*, 694 F.3d 539, 541–42 (5th Cir. 2012) (internal citations omitted).

[91] *Id.* at 542 (internal citations omitted).

[92] Rec. Doc. 8.